IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**TOMMY CLOWERS**                                                                 **PLAINTIFF**

**VS.**                              **NO. 3:14CV00048 JTR**

**CAROLYN W. COLVIN,**
Acting Commissioner,
**Social Security Administration**                                       **DEFENDANT**

## MEMORANDUM AND ORDER

Plaintiff, Tommy Clowers, has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance benefits (DIB) and Supplemental Security Income (SSI). According to Plaintiff, the Administrative Law Judge (ALJ) committed the following errors: (1) he failed to consider whether Plaintiff's shoulder pain and anti-social personality disorder were severe impairments; (2) he failed to fully develop the record by seeking clarification of the findings of consultative examiner Dr. Joseph; and (3) he failed to properly determine Plaintiff's residual functional capacity (RFC). The Court will analyze each of these grounds for reversal separately.

**The ALJ erred in finding Plaintiff's shoulder pain and anti-social personality disorder were not severe impairments:** The ALJ determined that Plaintiff had the severe impairments of borderline intellectual functioning and plantar

fasciitis. However, he did *not* find Plaintiff's shoulder pain and anti-social personality disorder to be severe impairments.

In addressing whether Plaintiff met Listing 12.05, regarding mental retardation, the ALJ found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and no episodes of decompensation. (Tr. 13-14.) The ALJ noted Plaintiff's allegation of disabling right shoulder pain, and the consultative psychologist Dr. Gilchrist's diagnosis of both borderline intellectual functioning *and* anti-social personality disorder. (Tr. 18-19.) In order for Plaintiff's shoulder pain and anti-social personality disorder to be deemed severe, it was Plaintiff's burden to show that those limitations significantly limit his physical or mental ability to do basic work activities. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

*Shoulder pain:* When asked at the administrative hearing why he could not work, Plaintiff primarily cited foot pain, which he traced to a broken right ankle in 1979 or 1980.[1] According to Plaintiff, the ankle had gradually worsened over the years, and it now prevented him from standing for 5-6 hours during a work day. (Tr. 39-43.) During questioning from his attorney, the following colloquy occurred:

---

[1] Plaintiff was 51 years old at the time of the administrative hearing, with past relevant work as a truck detailer. Educationally, he completed the seventh grade in special education classes, and testified that he could not read or write very well. (Tr. 33-35.)

> Q: All right; besides your foot and your ankle, and your reading and writing, is there anything else that keeps you from going back to, you know, detailing trucks, or doing construction work, anything else?
>
> A: My shoulder right here, it – you move your arm a lot it hurts.
>
> Q: Okay; now you pointed to your right shoulder?
>
> A: Yeah, right down in here.
>
> Q: All right.
>
> A: I don't know why.
>
> Q: Okay; have you ever had it checked out?
>
> A: No.

(Tr. 43.) Plaintiff explained that the shoulder pain prevented him from lifting 10-15 pounds, and hurt him when he swept the floor and when he washed dishes. (Tr. 44.)

In his closing statement, Plaintiff's attorney contended that the ankle fracture had worsened and prevented Plaintiff from working. (Tr. 50.) In his argument, he made no mention of Plaintiff's alleged shoulder pain.

In May of 2011, Plaintiff visited his treating physician, Dr. Thompson. Plaintiff complained of right shoulder pain, tracing the pain to falling from a horse five years earlier. (Tr. 223.) Dr. Thompson diagnosed arthritis of the shoulder and prescribed Meloxicam. (Tr. 224.)

Plaintiff was seen by Dr. Joseph for a consultative physical examination in

January of 2012. Dr. Joseph found a normal range of motion in the shoulders, and normal limb function. (Tr. 263.)

Plaintiff contends the ALJ should have found the shoulder pain to be severe, as it would limit his ability to reach, push and pull. However, the objective medical evidence supports the ALJ's decision. Plaintiff's treating physician responded to his shoulder complaint with conservative treatment. The consultative examiner found no limitations associated with shoulder pain. The ALJ thoroughly evaluated Plaintiff's credibility, appropriately utilizing the factors set forth in *Polaski v. Heckler*, 739 F.3d 1320 (8th Cir. 1984). Given the lack of medical treatment, the absence of physician-imposed limitations, and the ALJ's analysis of Plaintiff's credibility, substantial evidence supports the ALJ's decision not to consider Plaintiff's allegation of shoulder pain as a severe impairment.

*Anti-social disorder:* Plaintiff also argues the ALJ should have found his anti-social disorder to be a severe impairment. When seen by consultative examiner Dr. Gilchrist, a licensed psychologist, Plaintiff reported a remote history of mental health problems, including "anger problems." (Tr. 215.) He was not being treated for mental health issues at the time of the consultative exam, and reported no circumstances preventing him from seeking such treatment. (Tr. 216.) Dr. Gilchrist administered intelligence tests, and diagnosed Plaintiff with borderline intellectual functioning,

anti-social personality disorder, and a current GAF of 48, with a highest GAF during the preceding year of 52. (Tr. 218.)

The mere diagnosis of anti-social disorder by a consultative examiner does not require the ALJ to deem the disorder severe. Here, several factors support the ALJ's decision to find Plaintiff's anti-social disorder not to be severe. First, Plaintiff offered no testimony at the hearing that suggested this disorder was severe, or that it affected his work abilities. Second, the anti-social disorder diagnosis conflicts with information contained in the forms he submitted to support his disability claim.[2] Third, Plaintiff neither sought nor received any treatment for this disorder during the relevant period (from July 7, 2011, the alleged onset date, to March 20, 2013, the date of the ALJ's decision). Substantial evidence supports the ALJ's decision not to characterize Plaintiff's anti-social disorder, which was based entirely on Dr. Gilchrist's one-time examination of Plaintiff, as a severe impairment.

Finally, it is important to note that the ALJ found Plaintiff's RFC limited him to work where interpersonal contact was incidental to the work performed, with the required job tasks learned and performed by rote, with few variables and requiring little individual judgment. The supervision required, according to the ALJ, would be

---

[2]These forms, which are captioned, "Function Report-Adult," were completed and signed by Plaintiff's sister-in-law, on his behalf, in December 2001. These documents note that Plaintiff often visits with family, has no problem getting along with family, friends, and neighbors, and has no problem getting along with authority figures. (Tr. 165-66.)

simple, direct, and concrete. (Tr. 15.) These restrictions were embodied in the hypothetical question posed to the vocational expert, who testified there were jobs, such as production packager or small products assembler, which could be performed by the person described by the ALJ. (Tr. 48.) Thus, even if the ALJ erred in finding Plaintiff's anti-social disorder to be non-severe, the RFC assessed by the ALJ contained limitations which addressed this issue. As a result, Plaintiff was not prejudiced even if there was error at Step 2.

Accordingly, Plaintiff's arguments, that the ALJ erred in failing to find his shoulder pain or anti-social disorder to be severe impairments, are without merit.

**The ALJ erred by failing to fully develop the record:** The ALJ has a duty to fully and fairly develop the record. Plaintiff contends that the ALJ should have obtained additional evidence to clarify the findings of Dr. Joseph, who conducted a consultative physical examination on January 11, 2012. (Tr. 260-64.)

Dr. Joseph made numerous specific findings. For example, he found normal range of motion in Plaintiff's shoulders and ankles, normal limb function with the ability to oppose thumb to fingers and pick up a coin, and the ability to squat/arise from a squatting position. (Tr. 263.) Dr. Joseph's diagnosis was myalgia. The form asked for Dr. Joseph to cite any limitations in Plaintiff's ability to walk, stand, sit, life, carry, handle, finger, see, hear or speak and to assess the severity of any limitation as

mild, moderate, or severe. In his response, Dr. Joseph made a general statement that "standing" would cause pain in Plaintiff's feet and back after 15 minutes, without explaining the nature of any problems with Plaintiff's feet and back that would cause standing to create pain in those areas after only 15 minutes. (Tr. 264.) Dr. Joseph did not designate this limitation in Plaintiff's "ability to stand" as mild, moderate, or severe.

The ALJ addressed Dr. Joseph's conclusion, affording it no more than "very limited evidentiary weight" because the conclusion was inconsistent with Dr. Joseph's own clinical observations, as well as inconsistent with the medical evidence as a whole. (Tr. 23.) The Court concludes that substantial evidence supports the ALJ's analysis. While the consultative examiner could have been clearer, the general conclusion he offered was not supported by his own specific findings. These specific findings of Dr. Joseph, along with Plaintiff's failure to seek medical assistance, amply support the ALJ's decision and make the record more than adequate to allow the ALJ to decide the case.

**The ALJ erred in finding Plaintiff could perform light work:** According to Plaintiff, he does not possess the RFC to perform light work, with accommodations for borderline intellectual functioning. The RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her

7

findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, the ALJ provided a thorough analysis of how he arrived at Plaintiff's RFC.

Plaintiff faults the ALJ for failing to accept his subjective allegations at face value. However, the ALJ properly considered his assertions, finding the pertinent factors rendered the statements "not entirely credible." (Tr. 22.)

Plaintiff also faults the ALJ for failing to adopt Dr. Joseph's statement that Plaintiff would experience pain after fifteen minutes of standing. As previously discussed, there is no error in the ALJ's decision to discount this statement by Dr. Joseph.

The foundation for the RFC was the ALJ's credibility analysis and the evaluation of the medical evidence, both of which were appropriate and supported by substantial evidence. Accordingly, the Court concludes that the RFC is supported by substantial evidence, and the ALJ could properly use it in questioning the vocational expert.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in

the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this 30th day of June, 2015.

_____
UNITED STATES MAGISTRATE JUDGE